Tyrone F. BARNETT, Petitioner-Appellant,

v.

Joseph S. HOPPER, Warden, Respondent-Appellee.

No. 76–3230
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 10, 1977.

---

* Rule 18, 5th Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

James C. Bonner, Jr., Prisoner Legal Counseling Project, Athens, Ga., for petitioner-appellant.

Arthur K. Bolton, Atty. Gen., Atlanta, Ga., Griffin B. Bell, Jr., Asst. Atty. Gen., Savannah, Ga., for respondent-appellee.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

CLARK, Circuit Judge:

Petitioner Tyrone Barnett seeks habeas corpus relief from his May 1973 Georgia state conviction for armed robbery. After Georgia courts denied him the relief sought, so did the United States District Court for the Southern District of Georgia. Finding Barnett's claim for relief to be meritorious, we reverse.

Barnett and a codefendant were charged in 1973 with armed robbery. Their retained attorney reached an agreement with the prosecutor that in exchange for their guilty pleas, the prosecutor would recommend that the court impose a ten-year probated sentence conditioned on the payment of a $2,000 fine and court costs by each defendant. The statutory basis for the sentence is Ga.Code Ann. § 27–2709 (1972), which states "[t]he court may, in its discretion, require the payment of a fine or costs or both as a condition precedent to probation." Section 27–2529 establishes $2000 as the maximum permissible fine. Prior to the plea, arrangements were made by the defendants with their families for the payment of the fines. Each entered a guilty plea; the codefendant paid his fine and received probation. For some reason which

the record before us does not explain, the funds Barnett anticipated would be available could not be raised. When this occurred he was sentenced to ten years' imprisonment.

Barnett now contends that this sentence, which concededly was in accord with his agreement, should not have been conditioned upon an immediate payment of the bargained-for fine. He seeks to have the requirement of immediate payment modified to permit a reasonable installment payment schedule. Since the trial judge was accepting a plea bargained between the prosecutor and the defendants in imposing this sentence, the State argues that any possible impropriety has been waived.

We cannot agree that Barnett's plea constitutes a waiver of his right to raise the constitutional consequences which flowed from his subsequent inability to pay. In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), the Supreme Court dealt with the effect of a plea of guilty on a subsequent attack on claimed violations of constitutional rights. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), summarized the conclusions of the *Brady* trilogy thus:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior* to the entry of the guilty plea. [Emphasis supplied]

As the *Tollett* court added, "[t]he focus of federal habeas inquiry is the nature of the advice [given by an attorney] and the voluntariness of the plea, not the existence as such of an *antecedent* constitutional infirmity." 411 U.S. at 266, 93 S.Ct. at 1608 (emphasis supplied). Our decisions have similarly limited waiver to defects occurring before the guilty plea was entered. *Broxson v. Wainwright,* 477 F.2d 397 (5th

Cir. 1973); *Traber v. United States,* 466 F.2d 483 (5th Cir.), *cert. denied,* 409 U.S. 1044, 93 S.Ct. 542, 34 L.Ed.2d 495 (1972); *Waddy v. Davis,* 445 F.2d 1 (5th Cir. 1971). The constitutional violation which Barnett urges was the imposition of an improper sentence because of changed circumstances occurring *after* the guilty plea. *See Lefkowitz v. Newsome,* 420 U.S. 283, 288, 95 S.Ct. 886, 889, 43 L.Ed.2d 196 (1975). While the guilty plea, and any plea bargain which underlay it, constitutes a "break in the chain of events which has preceded it," *Tollett v. Henderson, supra* at 267, 93 S.Ct. at 1608, it does not waive any constitutional attack upon a subsequent sentence merely because that sentence accords with the defendant's agreement.

The district judge held that the doctrine of *volenti non fit injuria* applied. The thrust of this position is that since Barnett agreed to the imposition of the sentence, he may not rue back the bargain. Though there is merit to the argument as an abstract principle, it loses its force when applied to produce constitutionally impermissible confinement. Moreover, the plea bargain is not a sentence contract. It is expressly limited to an agreement by the defendant to plead guilty in exchange for a *suggestion* by the prosecutor that the judge impose a certain sentence. Even if the recommendation is often or usually followed, there still does not arise the type of *quid pro quo* that is present in the guilty plea itself and its waiver of previous constitutional violations. The trial court had to make an affirmative, independent decision to impose the sentence that was the result of plea bargaining. He also decided to permit the allegedly unconstitutional imprisonment to take place when Barnett's inability to pay a fine later arose. The court's choice to impose and enforce the sentence recommended is not so intimately a part of Barnett's plea bargain as to remove it from constitutional inspection. The question of the propriety of the sentence is properly before this court.

It is uncontroverted on this record that Barnett believed his fine would be paid.

We expressly pretermit any ruling on the legitimacy of a sentence of imprisonment that is imposed upon a defendant who affirmatively agrees to incarceration in lieu of payment of a fine. If a strict adherence to contract law principles would indicate that Barnett should be bound to imprisonment in the event impecuniousness prevented his financial performance, such a contractual approach still could not be squared with the constitutional doctrine established by the *Williams-Morris-Tate* line of decisions. Barnett's agreement to this unconstitutional condition was predicated on his mistaken belief the fine would be paid, thus it is clearly distinguishable from the case of a defendant who explicitly agrees to a recommended period of imprisonment in exchange for a plea.

■ We note at the outset of our consideration of the merits that the State is correct in arguing that, on their facts, the Supreme Court precedents are distinguishable from the present situation. In *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the Court held that an individual unable to pay a fine could not constitutionally be incarcerated beyond the maximum duration fixed by statute. The Illinois defendant had been sentenced to the maximum confinement and then required to remain 101 days further to satisfy at $5 per day his $505 fine and court costs. On the same day, the Court in *Morris v. Schoonfield,* 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773 (1970) (concurring memorandum opinion), vacated a conviction and remanded it for reconsideration in light of *Williams v. Illinois.* Justice White, with three other justices concurring, opined that an indigent could not be imprisoned for failure to pay a fine immediately, regardless of whether this resulted in incarceration for a term longer than the maximum permitted under statute. This was based on the view that the constitution forbade converting a fine into a sentence due to immediate financial inability to pay. The next term in *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the Court adopted the language from the *Morris* concurrence stating the broad proposition that

imprisonment for failure to pay a fine immediately is improper. As the State here points out, however, *Tate* dealt with a conviction in a Texas court empowered to impose only fines. If a defendant could not pay the fine, it was converted into a prison sentence. The court further stated:

> Imprisonment in such a case is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant cannot pay because he is indigent and his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment.

*Id.* at 399, 91 S.Ct. at 671. Admitting the broad discretion granted trial judges in fixing punishment, the *Tate* court stated that once the determination is made that imprisonment is unnecessary and a fine would suffice, imprisonment could not then be imposed for inability to pay that fine. Finally the court stated that other methods, payment by installment being the only one specifically noted, *id.* at 400 n. 5, 91 S.Ct. at 671 n. 5, have been utilized and were constitutionally permissible. In *Williams v. Illinois,* the Court also referred to satisfaction of the fine by work performed after a probationer/parolee has been released from incarceration. 399 U.S. at 244 n. 21, 90 S.Ct. at 2024 n. 21. As the Supreme Court indicated in *Williams v. Illinois, id.* at 244–245, 90 S.Ct. at 2024:

> The State is free to choose from among the variety of solutions already proposed and, of course, it may devise new ones. [Footnote omitted.]

■ This court has not interpreted the *Williams-Morris-Tate* line of cases to be limited to their precise facts. When a defendant is imprisoned for financial inability to pay a fine immediately, he is treated more severely than a person capable of paying a fine immediately. The sole distinction is one of wealth, and therefore the procedure is invalid. *Frazier v. Jordan,* 457 F.2d 726 (5th Cir. 1972). Though *Frazier*

**554**

was based on the proposition that wealth is a "suspect classification" and such a conclusion has since been drawn into question by such authority as *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 29, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973) (plurality opinion of four justices), the basic principles remain sound. To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws. *See also Burton v. Goodlett,* 480 F.2d 983 (5th Cir. 1973).

As did the *Frazier* decision, we too abstain from drawing into question the imprisonment of a defendant who, though capable of paying a fine, refuses or neglects to do so. As the Court further stated:

> "Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means; the determination of the constitutionality of imprisonment in that circumstance must await the presentation of a concrete case." *Tate v. Short,* 401 U.S. at 400–401, 91 S.Ct. at 672, 28 L.Ed.2d at 134–135.

457 F.2d at 730.

■ The sentence imposed was unconstitutional. The order of the district court denying habeas relief is reversed and the cause is remanded with directions to issue the writ unless within 30 days after the receipt of the mandate in the District Court the sentence is reformed in a manner not inconsistent with this opinion or the petitioner is allowed to replead.

REVERSED AND REMANDED WITH DIRECTIONS.