# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-00116-COA

**WILLIAM BLACK A/K/A WILLIAM TAYLOR BLACK**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2018 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM BLACK (PRO SE) |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA MARIE AINSWORTH |
| | ASHLEY L. SULSER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 08/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1. In 2010, William Black pleaded guilty to murder in the Noxubee County Circuit Court. Eight years later, he filed a motion for post-conviction relief (PCR), which the circuit court denied as time-barred and without merit. Black, appearing pro se, now appeals from the circuit court's denial of his PCR motion. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 16, 2005, Black was indicted for one count of capital murder (murder during commission of a robbery) and one count of burglary of a dwelling. On March 21, 2005, the circuit court arraigned Black and ordered that any "motion for mental evaluation

to determine [Black's] competence, mental retardation and insanity [was] to be filed no later than May 21, 2005." Although no motion for mental evaluation exists in the record, Black attached to his PCR motion a summary report of his "outpatient forensic mental evaluation" by two physicians at the Mississippi State Hospital, dated July 9, 2009. The report stated Black was evaluated by court order upon the State's motion. The detailed report concluded Black was competent to stand trial.

¶3. On May 19, 2010, Black pleaded guilty to the reduced charge of murder.[1] The circuit court found his plea was "freely, voluntarily, knowingly, and intelligently entered." The circuit court sentenced Black to serve life in prison in the custody of the Mississippi Department of Corrections (MDOC).

¶4. On January 23, 2018, Black filed a PCR motion arguing (1) his guilty plea was not voluntary or intelligent, (2) his due process rights were violated because the circuit court never conducted a competency hearing, and (3) he received ineffective assistance of counsel. On December 17, 2018, the circuit court denied Black's PCR motion, finding it time-barred and without merit.

## STANDARD OF REVIEW

¶5. "We review the dismissal or denial of a PCR motion for abuse of discretion. We will only reverse if the trial court's decision is clearly erroneous. When reviewing questions of law, our standard is de novo." *Ware v. State*, 258 So. 3d 315, 317-18 (¶7) (Miss. Ct. App. 2018) (quoting *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012)).

---

[1] As a part of Black's plea agreement, the State reduced his capital-murder charge to murder, and Count II (burglary) was retired to the files.

## ANALYSIS

### I.      Procedural Time-Bar

¶6.      Black argues the circuit court erred in finding his PCR motion was time barred. Mississippi Code Annotated section 99-39-5(2) (Rev. 2015) requires a defendant file his PCR motion within three years after the judgment of conviction is entered. Black filed his PCR motion on January 23, 2018, almost eight years after the circuit court entered his judgment of conviction for murder. Therefore, we agree with the circuit court that Black's PCR motion is time-barred.

¶7.      Black attempts to overcome the procedural bar by arguing his PCR motion is excepted under *Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010), which held that "errors affecting fundamental constitutional rights are excepted from the procedural bars of the [Uniform Post-Conviction Collateral Relief Act]." Black claims his due process rights were violated. In *Salter v. State*, 184 So. 3d 944, 950 (¶22) (Miss. Ct. App. 2015), we noted that only four types of rights have been recognized to be "fundamental" since *Rowland*: "(1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right not to be subject to ex post facto laws."

¶8.      Additionally, in *Brown v. State*, 198 So. 3d 325, 330 (¶19) (Miss. Ct. App. 2015), we recognized that "the due-process right not to stand trial or be convicted while incompetent is a fundamental right not subject to the procedural bars of the Mississippi postconviction-relief statutes." (Citing *Smith v. State*, 149 So. 3d 1027, 1031 (¶8) (Miss. 2014), *overruled on other grounds by Pitchford v. State*, 240 So. 3d 1061, 1070 (¶49) (Miss. 2017)). While

*Pitchford* overruled *Smith*'s determination that retroactive competency hearings are inadequate protection of due process rights, it confirmed that "[i]t is a violation of due process to try or convict a criminal defendant who is legally incompetent" and that "[t]his prohibition is fundamental to our adversarial system of justice . . . ." *Pitchford*, 240 So. 3d at 1067 (¶30) (citations omitted). In its brief, the State recognizes that "a defendant's due process right to not be convicted while incompetent is a fundamental right excepted from the procedural bars. . . . However, it is the movant's burden to prove an exception applies." *Blount v. State*, 126 So. 3d 927, 931 (¶14) (Miss. Ct. App. 2013).

¶9. Lastly,

> [w]hile ineffective assistance of counsel claims are not traditionally categorized as a 'fundamental right' under *Rowland*, the Mississippi Supreme Court held that 'under the facts of a particular case, this Court might find that a lawyer's performance was so deficient, and so prejudicial to the defendant, that the defendant's fundamental constitutional rights were violated. However, this Court has never held that merely raising a claim of ineffective assistance of counsel is sufficient to surmount the procedural bar.

*James v. State*, 266 So. 3d 1029, 1031 (¶5) (Miss. Ct. App. 2018) (quoting *Bevill v. State*, 669 So. 2d 14, 17 (Miss. 1996)), *cert. denied*, 267 So. 3d 281 (Miss. 2019). Our supreme court has determined, however, that "merely asserting a constitutional-right violation is insufficient to overcome the procedural bars. 'There must at least appear to be some basis for the truth of the claim before the procedural bar will be waived.'" *Means v. State*, 43 So. 3d 438, 442 (¶12) (Miss. 2010) (quoting *Crosby v. State*, 16 So. 3d 74, 79 (¶10) (Miss. Ct. App. 2009)). As competency is, and ineffective assistance may be, excepted from procedural bars under *Rowland*, we address these issues.

4

## II.    Voluntariness of Guilty Plea

¶10.    Black argues that his guilty plea was not voluntarily and intelligently made because of his mental status at the time of his plea and because he received erroneous advice from his counsel.

¶11.    "Before the trial court may accept a guilty plea, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea." URCCC 8.04(A)(3).[2] "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Burrough v. State*, 9 So. 3d 368, 373 (¶11) (Miss. 2009). The PCR petitioner "bears the burden of proving by a preponderance of the evidence that the guilty plea was involuntary." *Roby v. State*, 282 So. 3d 477, 481 (¶10) (Miss. Ct. App. 2019).

¶12.    First, a review of the plea transcript does not support Black's claims of mental incapacity. "Great weight is given to statements made under oath and in open court during sentencing." *Hoyt v. State*, 952 So. 2d 1016, 1020 (¶8) (Miss. Ct. App. 2007) (quoting *Gable v. State*, 748 So. 2d 703, 706 (¶11) (Miss. 1999)). The circuit court questioned Black about his mental state and thoroughly examined Black's ability to understand the plea proceedings and the consequences of his plea. After Black affirmed his ability and desire to plead guilty, the circuit court found that Black's plea was "freely, voluntarily, knowingly,

_____

[2] The Uniform Rules of Circuit and County Court Practice relating to criminal procedure have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017; however, the former rules were in effective at the time of Black's guilty plea in 2010 and thus are applicable here.

5

and intelligently made." Nothing in the plea colloquy indicates Black was mentally infirm and could not understand the proceedings.

¶13. Black further argues that his plea was involuntary and unintelligent because he was "under duress from untreated depression" when he pleaded guilty. A review of his mental evaluation report, plea hearing, and plea petition all belie Black's assertions. Black complains that he was not treated for depression at the time of his plea hearing and that the circuit court "never mentioned the status or treatment of [his] depression[,] only his sobriety." Black points to his July 2009 mental evaluation report, which stated that he "reported experiencing symptoms of depression at the time of the alleged offense." However, the State correctly notes that this is the only statement related to his depression in the entire record, excluding Black's own assertions. Further, the report stated the physicians were unanimous in their opinion that Black had "the sufficient present ability to consult with an attorney with a reasonable degree of rational understanding in the preparation of his defense, and that he has a rational as well as factual understanding of the nature and object of the legal proceedings against him," as well as "the capacity to understand and knowingly, intelligently, and voluntarily . . . waive or assert his constitutional rights[,] including his right not to incriminate himself." Additionally, the report found Black "was not under the influence of extreme mental or emotional disturbance at the times of the alleged offenses and that his capacity to appreciate the criminality of his alleged acts . . . was not substantially impaired at those times."

¶14. Black's claims are further contradicted by his plea petition, where he swore under

6

oath that he possessed satisfactory physical and mental health at the time of the hearing and that he offered his guilty plea "freely and voluntarily . . . of [his] own accord . . . with full understanding of all the matters set forth in the indictment." Black does not provide any evidence to support his claim of depression or how his allegedly faulty mental state affected his plea. Therefore, this argument is without merit.

¶15. Black also argues that his plea was involuntary because he received "erroneous advice" from his counsel regarding his parole-eligibility status. Black contends that his counsel advised him repeatedly that he would receive life imprisonment with eligibility for parole after serving ten years if he agreed to plead guilty.[3] However, the only support to this assertion is Black's affidavit that he attached to his PCR motion. In the affidavit, Black alleged that when he went to sign his plea petition, he noticed that the language stated that he would be eligible for parole at age sixty-five, not after ten years as he was allegedly promised. According to Black, his counsel instructed him to mark through that language "and just put 'life.'" Counsel assured Black that a new petition would be drafted with the correct parole language. Black claims this "new petition" was never filed or submitted to

---

[3] Black attached to his brief two letters from his counsel: one dated July 15, 2011, to a prison caseworker, and one dated September 15, 2016, to Black. He labels these letters "Exhibit F," along with a series of emails in 2011 from Black's counsel to "Johnny Black" in order to further his contention that he was promised release and parole after serving ten years. The only correspondence properly before this Court are the emails attached to the PCR motion and labeled "Exhibit F." The letters were not included in the record but merely attached to his brief. "[T]his Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record." *Brown v. State*, 54 So. 3d 882, 884 (¶10) (Miss. Ct. App. 2011). Regardless, none of the correspondence furthers Black's contention that in exchange for his guilty plea he was promised release after serving ten years.

the circuit court, and therefore, he pleaded guilty based upon misinformation.

¶16.    This Court has held that "[b]ecause parole is a matter of legislative grace, parole eligibility or noneligibility is not considered a 'consequence' of a guilty plea." *Moore v. State*, 248 So. 3d 845, 852 (¶17) (Miss. Ct. App. 2017) (quoting *Mosley v. State*, 150 So. 3d 127, 136-37 (¶29) (Miss. Ct. App. 2014)).  Thus, "[i]t is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted." *Id.*  However, "a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation." *Id.* (emphasis omitted).

¶17.    Black's plea colloquy does not indicate there was an offer of parole after ten years served.  Black affirmed twice at his plea hearing that he understood the mandatory sentence for the crime of murder was life imprisonment.  At the end of the hearing, the circuit court asked one final time if Black understood his rights and "the sentence that [the circuit court] must impose" and how he wished to plead.  Black affirmed that he wished to plead guilty. Further, Black denied he had been "promised . . . any rewards or hopes of lenience to get [him] to plead guilty."  Also, Black's signed, sworn plea petition acknowledged that no one had "made any promise or suggestion of any kind to [him] [or] . . . that [he] would receive a lighter sentence, or probation" if he pleaded guilty.  Moreover, he agreed that his lawyer had not made any threats or promises to induce him to enter a guilty plea.  Black's petition also stated he knew the minimum and maximum sentence for the charge of murder was

8

"life."[4] The plea colloquy and petition clearly shows Black understood his sentence was life imprisonment.

¶18.    In the order denying Black's PCR motion, the circuit court further explained that the court made no promise to Black about his eligibility for parole: "The Court does not inform defendants of what amount of their sentence they will have to serve" because sentence computation is solely the province of the MDOC. The court also explained that the Mississippi Parole Board "primarily determines parole eligibility."

¶19.    The record does not show Black was misinformed about his parole eligibility. This issue is without merit.

### III.    Lack of Competency Hearing

¶20.    Black argues that his due process rights were violated when the circuit court failed to conduct a competency hearing after ordering a mental evaluation under Uniform Rule of Circuit and County Court Practice 9.06.[5]

¶21.    Rule 9.06 provided:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination . . . . After the examination the court shall conduct a hearing to

---

[4] On the part of his plea petition acknowledging the maximum and minimum sentence, writing is scratched out, and the word "life" written above it appears with Black's initials. Black states in his affidavit that he marked out "age 65 defendant is parole eligible." However, this fact does not further Black's argument. *See Moore*, 248 So. 3d at 852 (¶17) (parole eligibility not part of plea).

[5] Effective July 1, 2017, Uniform Rule of Circuit and County Court Practice 9.06 was replaced by Rule 12 of the Mississippi Rules of Criminal Procedure, but former Rule 9.06 was still in effect at the time of Black's guilty plea and is applicable here.

9

determine if the defendant is competent to stand trial.[6]

"The law, however, presumes a criminal defendant competent to stand trial." *Pitchford*, 240 So. 3d at 1067 (¶32). "[T]he defendant bears the burden to prove 'by substantial evidence that he or she is mentally incompetent to stand trial.'" *Id.* (quoting *Evans v. State*, 725 So. 2d 613, 660 (¶180) (Miss. 1997)).

¶22. Black relies on *Sanders v. State*, 9 So. 3d 1132, 1136 (¶16) (Miss. 2009), where the Mississippi Supreme Court strictly interpreted Rule 9.06 to require a competency hearing "once a trial court orders a psychiatric evaluation to determine competency to stand trial." Black argues that once the circuit court ordered his mental evaluation, the court was required to hold a competency hearing and make an on-the-record finding as to whether Black was competent to stand trial. We disagree.

¶23. In *Pitchford*, the Mississippi Supreme Court specifically rejected the *Sanders* court's strict interpretation of Rule 9.06, holding that "a trial court's competency evaluation order does not in and of itself conclusively (or necessarily) establish, for purposes of Rule 9.06's mandates, or appellate-review purposes, that the trial court had reasonable grounds to believe the defendant was incompetent to stand trial." *Pitchford*, 240 So. 3d at 1069 (¶42). The mere filing of a motion for a mental evaluation and subsequent order "may have little bearing on competency itself." *Evans v. State*, 226 So. 3d 1, 15 n.2 (Miss. 2017). "[A] determination [of mental competency] must be made based on the facts and circumstances

---

[6] "Though geared towards competency to stand trial, Rule 9.06 may be applied to a defendant's entry of a guilty plea." *Smith v. State*, 831 So. 2d 590, 593 (¶11) (Miss. Ct. App. 2002).

attending each particular case." *Pitchford*, 240 So. 3d at 1069 (¶42).

¶24.    Here, Black attached to his PCR motion the arraignment order of March 2005, which states his "motion for mental evaluation to determine competence, mental retardation and insanity is to be filed no later than May 21, 2005."[7] The summary report dated July 9, 2009, was filed in the circuit court and detailed the results of the outpatient forensic mental examination.  Two physicians unanimously found Black competent to stand trial or plead guilty.  Accordingly, a hearing to determine competency was neither required nor needed.  The record contains no reasonable grounds for the circuit court to believe Black was incompetent to plead guilty.  Therefore, the circuit court had no obligation to conduct a competency hearing after ordering a mental evaluation.  This issue is without merit.

## IV.    Ineffective Assistance of Counsel

¶25.    Lastly, Black claims he received ineffective assistance of counsel from all three of his court-appointed attorneys.  To succeed on this claim, the defendant must prove (1) that "counsel's performance was deficient," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Lovett v. State*, 270 So. 3d 133, 135 (¶5) (Miss. Ct. App. 2018) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "In the context of a guilty plea, one must show counsel's errors proximately resulted in the guilty plea[,] and, but for counsel's error, the defendant would not have entered the guilty plea."  *Moore*, 248 So. 3d at 850 (¶14) (internal quotation marks omitted).  Further, "[t]he defendant must show unprofessional

---

[7] This statement is not, as Black contends, an order from the circuit court for a mental evaluation.

errors of substantial gravity . . . and allege such facts with specificity and detail." *Wash v. State*, 218 So. 3d 764, 766-67 (¶6) (Miss. Ct. App. 2017) (internal quotation marks omitted). "However, there is a strong rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

¶26. Black claims that his counsel's performance was deficient by (1) failing to protect his due process rights to a competency hearing, (2) failing to advance a speedy trial claim, (3) failing to protect his due process rights during the plea process, (4) failing to provide a basic defense, and (5) providing "erroneous advice" about his parole eligibility. As addressed above, a competency hearing was not required, as the two physicians found Black competent to stand trial. Therefore, counsel was not ineffective for failing to move for a competency hearing. We also find no merit to Black's argument that his counsel was deficient for providing him erroneous advice regarding his parole eligibility. As stated earlier, the record contradicts Black's argument regarding this alleged erroneous advice. Further, as the State points out, Black acknowledged in his plea petition that any statements made by his counsel regarding probation or a lighter sentence were merely a prediction and not binding upon the circuit court. Additionally, Black offers no support for his assertion that counsel performed deficiently by failing to assert his speedy trial rights.

¶27. Lastly, Black contends his counsel failed to protect his due process rights during his plea and failed to provide a basic defense. Again, the record contradicts Black's assertions. According to Black's plea-hearing transcript, Black advised the circuit court, under oath, that his counsel reviewed and explained his plea petition to him. Black further advised that

12

his counsel explained the facts of his case and the State's requisite burden of proof. Most importantly, Black stated that he was satisfied with his counsel's advice and assistance throughout the proceedings. "When a defendant's assertions of ineffective assistance of counsel are substantially contradicted by the court record of the proceedings, the court may disregard such assertions." *Neal v. State*, 186 So. 3d 378, 384 (¶20) (Miss. Ct. App. 2016). Because Black offers nothing more than bare assertions that are clearly contradicted by the record, we find these claims also to be without merit.

## CONCLUSION

¶28. Finding no error in the circuit court's denial of Black's PCR motion, we affirm the circuit court's judgment.

¶29. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**